NEW-YORK,
May, 1813.

JACKSON
v.
BROWN.

JACKSON, ex dem. GILLET AND OTHERS, against BROWN.

*A conveyance by an Oneida indian, in 1791, being previous to the act of the 4th of April, 1801, (see the act relative to the indians within this state, passed 10th of April, 1813. Sess. 36. c. 92. 2 N. R. L. 153.) of land of which he was seised in his individual capacity, and distinct from his tribe, as the heir of an indian to whom it was granted by the state, for his services during the revolutionary war, is valid, (S. P. Jackson v. Sharpe, 14 Johns. Rep. 472.) although made without special authority from the legislature, and without the approbation of the surveyor-general.*

*The approbation of the surveyor-general to the deed of an indian patentee, or his heirs, in pursuance of the 55th section of the act, (sess. 36. c. 92. 2 N. R. L. 172.) to a deed that is void and inoperative, does not preclude him from afterwards giving his assent to a valid and operative deed from the same grantor, for the same land.*

*The endorsement of his approbation, on the deed, needs not state his reasons for giving it "I approve of the within deed," is sufficient.*

THIS was an action of ejectment brought to recover part of lot No. 16, in the town of *Junius*, in the county of *Seneca.* Issue was joined in *February*, 1816; and the defendant, afterwards, in *August* term, 1816, pleaded *puis darrein conti-- nuance*, that the plaintiff ought not further to have and maintain his action on the demise of *David Tewahangarahkan*, one of the lessors, because *David* had, on the 25th of *July*, 1816, by his indenture duly approved by the surveyor-general, granted, bargained, sold, and released the premises in question, and all action and actions in relation thereto, to the defendant and his heirs. The cause was tried before Mr. J. *Spencer*, at the *Seneca* circuit, in *June*, 1817.

Letters patent for lots No. 4 and 16, in the town of *Junius*, were, on the 29th of *January*, 1791, issued to *Honyost Tewa-- hangarahkan*, an *Oneida* indian, and a lieutenant in the line of this state, who was killed in 1779, for his services in the revolutionary war. *Honyost* left two sons, *Honyost*, and the lessor, *David*, who is an *Oneida* indian, residing with the *Oneida* tribe. On the 31st of *December*, 1791, *Elizabeth* and *Honyost*, the widow, and one of the sons and heirs of *Honyost*, the patentee, by deed, without authority from the legislature, or the approbation of the surveyor-general, conveyed the two lots No. 4 and 16, in consideration of ten pounds, to *Cornelius A. Van Slyck*, who, in *December*, 1792, conveyed to *J. Atkinson*, who, afterwards, conveyed the same to *James Fisk*. *Fisk*, in *March*, 1808, conveyed the premises in question to *Cass*, who, on the 9th of *July*, 1811, conveyed the same to the defendant. On the 1st of *August*, 1792, one *Honyost Tewahangarahkan*, a *Cayuga* indian, who was admitted to have no interest, conveyed the two lots to *P. Campbell*, who, in *October*, 1797, conveyed the same to *D. Matthews*. The defendant, and those under whom he

claims had been in possession of the premises, claiming title, since the year 1803. By indenture, dated *May* 26th, 1809, *Honyost* and *David*, the sons and heirs of the patentee, in consideration of 2,000 dollars, granted the two lots, Nos. 4 and 16, to the lessor, *Gillet*, in fee. On this deed was endorsed the certificate of the surveyor general, that it appeared to him that it had been fairly obtained ; that the consideration was competent, and had been sufficiently secured, in consequence of which he endorsed his approbation. By indenture, dated the 25th of *July*, 1816, the lessor, *David*, reciting that he claimed an undivided moiety in lot No. 16. in consideration of 80 dollars, released to the defendant, and several other persons, being in possession, and their heirs, all his interest therein, and also released all actions and demands in relation to the same. This was the release mentioned in the defendant's plea, *puis darrein continuance.* The surveyor general's approbation was endorsed in these words. " *Surveyor general's office, Albany, July* 27th, 1816. *I approve of the within deed. Simeon De Witt, surveyor general.*" To show that the consideration mentioned in the release was incompetent, it was proved, on the part of the plaintiff, that the lot, at the time of the execution of it, was worth 12,000 dollars.

A verdict was taken, by consent, for the plaintiff, subject to the opinion of the court, on a case containing the facts above stated.

The case was argued by *Sill* and *Brown* for the plaintiff, and *Cady*, for the defendant.

SPENCER, J. delivered the opinion of the court. The lessors of the plaintiff claim a right to recover one half of the lands in the defendant's possession, either under the deed from *David*, the Indian, as one of the two heirs of his father, to *Gillet*, of the 25th of *May*, 1809, or else upon the demise of *David*.

Since the case of *Jackson* v. *Sharp*, (14 *Johns. Rep.* 472.) there can be no doubt that the deed of the 31st of *December*, 1791, from the widow and one of the sons of the patentee, is

NEW-YORK,
May, 1818.

JACKSON
v.
BROWN.

a valid deed; but if it were not, the defendant, or those under whom he claims, entered on the premises in 1803, under claim and colour of title; and, consequently, the conveyance to *Gillet*, in 1809, was void and inoperative.

The right to recover on the demise of *David* will depend on the right of the surveyor general to give his assent and approbation on the release of the 25th of *July*, 1816, to the defendant and several others.

The objections to this deed are, 1st. That the surveyor general, having given his approbation to the deed from *David* to *Gillet*, his power was exhausted, and he could not give his approbation to any other deed from the same Indian for the same land, and, 2d. That the approbation is informal and defective.

By the 55th section of the act relative to the different tribes and nations of Indians within this state, passed 10th of *April*, 1813, (2 *N. R. L.* 158.) the heirs of the Indians to whom land was granted for military services in the revolutionary war were rendered capable of taking and holding by descent, and every conveyance thereafter to be executed by the patentee, or his heirs, to any citizen of the state, for any such land, was declared to be valid, if executed with the approbation of the surveyor general, to be expressed by an endorsement on such conveyance, and signed by him.

By an act of the 2d of *March*, 1810, the surveyor general was authorized to ascertain whether legal conveyances made by an Indian patentee of lands granted for military services in the revolutionary war, or their heirs, had been obtained fairly, for a competent consideration paid, or property secured, to be paid to the grantors, before he endorsed his approbation, in pursuance of the act for the relief of the heirs of the *Oneida* Indians.

If the deed to *Gillet* was void for maintenance, in consequence of an adverse possession, it would seem to me that the approbation of the surveyor general would follow the fate of the principal or subject matter, and that it would be a void execution of the power entrusted to him. His assent being given to a deed that could have no effect or operation in law, was not an execution of the power vested in him, and could not preclude his approving of a valid deed. Indeed,

the act of 1810 which confers the authority on the surveyor general of approbating deeds given by Indian patentees, or their heirs, restricts the approbation to legal deeds; the deed, then, to *Gillet* not being legal, the approbation on that ground was void, and being void, it is a nullity.

The second point is untenable. The act of the 13th of *April*, 1813, requires only the approbation of the surveyor general to be expressed by an endorsement on the conveyance; he is not required to set forth the reasons or inducements to such approbation, and the one given in this case is a compliance with the act.

NEW-YORK, May, 1818.

Judgment for the defendant.